# Commonwealth *v.* McComb, Appellant.

*Constitutional law—Police power—Game laws—Act of May* 31, 1907,
*P. L.* 329.

The Act of May 31, 1907, P. L. 329, entitled: "An act prohibiting
the use of automatic guns for the killing of game or wild birds within
this commonwealth, and prescribing a penalty for violation of its
provisions," is constitutional. It is not an unreasonable exercise of
the police power by the legislature, nor does it arbitrarily interfere
with private property, nor unjustly discriminate against the maker
of a particular kind of gun.

Argued Feb. 8, 1910. Appeal, No. 248, Jan. T., 1909, by
defendant, from judgment of the Superior Court, Oct. T.,
1908, No. 148, reversing judgment of Q. S. Delaware County,
Miscellaneous Docket, page 316, in case of Commonwealth of
Pennsylvania v. Thomas W. McComb. Before Fell, C. J.,
Brown, Potter, Elkin and Moschzisker, JJ. Affirmed.

Appeal from summary conviction. Before Johnson, P. J.

The defendant was charged before an alderman of the city
of Chester with killing a wild duck in the county of Delaware
with an automatic gun in violation of the Act of May 31,
1907, P. L. 329. The defendant admitted the killing and set
up that the act of assembly was unconstitutional. The alder-
man sentenced him to pay a fine of $50.00. An appeal was
taken to the court of quarter sessions which declared the act
unconstitutional and discharged the defendant.

The commonwealth appealed to the Superior Court, which
reversed the judgment of the court of quarter sessions, Or-
lady, J., delivering the following opinion (see 39 Pa. Superior
Ct. 411):

The defendant was arrested, taken before an alderman of
the city of Chester, and convicted of violating the provisions
of the following act of assembly: "An Act prohibiting the
use of automatic guns for the killing of game or wild birds

within this commonwealth," and prescribing a penalty for the violation of its provisions.

Section 1. "Be it enacted, etc., that from and after the passage of this act, it shall be unlawful for any person to use what is commonly known as an automatic gun for the killing of game within this commonwealth. Each and every person violating any provision of this section shall be liable to a penalty of $50.00 for each offense, or shall suffer an imprisonment in the common jail of the county for a period of one day for each dollar of penalty imposed: Act of May 31, 1907, P. L. 329.

An appeal was allowed by the court below, and after a full hearing, the defendant was discharged for the reason that the act was unconstitutional in that the prohibition of the killing of game with automatic guns was a discrimination against the makers of such guns, and deprived them of the equal protection of the laws guaranteed by the constitution of the United States, and the constitution of Pennsylvania. This act is one of a very large number beginning in the early colonial days and continuing through almost every session of the legislative body, providing for the manner of taking game; the methods employed; limiting the amount of the bag or catch of every kind of fish, fowl or beast known in Pennsylvania.

It is earnestly contended that the act is unconstitutional, because it is an unreasonable exercise of police power by the legislature, arbitrarily interfering with private property and unjustly discriminating against the owner of a certain kind of gun. So to hold, we would be obliged to declare that a number of similar statutes are void by parity of reason. The extent and limitation of what is known as police power, has been a fruitful subject of discussion in the appellate courts of nearly every state in the union. It is universally conceded to include everything essential to the public safety, health and morals and to justify the destruction or abatement by summary proceedings of whatever may be regarded as a public nuisance, and wherever the public interests demand it, a large discretion is necessarily vested in the legislature

to determine not only what the interests and the public require, but what measures are necessary for the protection of such interests: Barbier v. Connolly, 113 U. S. 27 (5 Sup. Ct. Repr. 357).

The preservation of game and fish has always been treated as within the proper domain of the police power, and laws, limiting the season when birds and wild animals may be killed, and had for sale, and prescribing the manner in which they may be taken, have been repeatedly upheld by the courts. The duty of preserving the fish and game of a state from extinction, by prohibiting exhaustive methods of taking it, or the use of destructive instruments as are likely to result in the extermination of the young as well as the mature, is as clear as its power to secure to its citizens, as far as possible, a supply of any other wholesome food: Lawton v. Steele, 152 U. S. 133 (14 Sup. Ct. Repr. 499). It is but a decent respect due to the wisdom, integrity and patriotism of the legislative body, by which any law is passed, to presume in favor of its validity, until its violation of the constitution is proved beyond all reasonable doubt: Ogden v. Saunders, 25 U. S. 213. A reasonable doubt must be solved in favor of the legislative action and the act be sustained: Cooley's Constitutional Limitations (7th ed.), 253. When the legislature has considered the question and passed upon it, this makes a prima facie case in the law: Com. v. Vrooman, 164 Pa. 306. It must be manifest that the legislative department has overstepped the boundaries marked by the constitution before the courts are justified in nullifying the statute. The legislature comes direct from the people, and by its enactment gives expression to the popular will. This will so expressed, is the law of the land, except where the constitution unquestionably forbids it: Com. v. Darmska, 35 Pa. Superior Ct. 580; Likins's Petition (No. 1), 37 Pa. Superior Ct. 625. The test as to whether the police power is validly exercised, is whether the enactment has relation to the public welfare, and it has been deemed of sufficient importance to justify the legislatures of practically all of our states, to enact laws for the protection and preservation of game, and we

have seen no case which challenges this as a legislative right, clearly within the exercise of the police power.

Prohibiting taking fish by any device other than hook and line, or rod held in the hand, the use of nets, the size and number of a catch; the prohibition against the use of destructive agencies like torpedoes, quicklime or explosives; the season in which the fish may be caught have all been legislated about, and the enactments have been sustained by our appellate courts.

By the Act of May 17, 1883, P. L. 34, it is made unlawful to chase, hunt, shoot, kill or destroy any web-footed wild fowl from or with any craft or boat propelled by steam or sails. By the Act of June 4, 1897, P. L. 123, it is provided, that no person shall kill, wound, trap, net, snare or catch with birdlime or any similar substance, poison, or drug, any wild bird or make use of dog or dogs in hunting elk, deer or fawn, within this state, or hunt or cause or permit the hunting of hares or rabbits with ferrets, or set, lay or prepare any trap, snare, net, birdlime, swivel gun, pitfall, turkey blind, or pen, or any other contrivance with intent to catch, take or kill any of the birds and mammals mentioned in that act, or any use of any artificial light, battery, or any other deception or contrivance whatever, with intent to attract, or deceive any of the birds or mammals mentioned, except the use of decoys, in hunting ducks, wild geese and brant.

The swivel gun referred to in the act of 1897, is described as a small cannon, revolving on a swivel, so that it may maim or kill a number of game at a single discharge, but it is always under the direction and control of the operator. The automatic gun mentioned in this act is described as "one that is fired from the shoulder, and the recoil developed by the exploded cartridge, ejects the shell, cocks the hammer, and feeds in a fresh cartridge from a magazine into the chamber of the gun," so that all that is required to discharge it is to pull the trigger. It is not necessary to justify the wisdom of the legislative enactment; the whole question has so frequently been the subject of discussion in the legislature and courts, that we must accept it as a result of their deliberations, that

an automatic gun is not a proper weapon for the killing of game, within this commonwealth. Nor are the courts concerned about a technical though trifling interference with the pleasure of a hunter, or the property interest of a gun maker in deciding a question of public interest and welfare. Indeed, the source of police power, as to game, flows from the duty of the state to preserve for its people a valuable food supply: Phelps v. Racey, 60 N. Y. 10; Ex parte Maier, 103 Cal. 476 (37 Pac. Repr. 402); Magner v. People, 97 Ill. 320, and the cases there cited. The exercise of the state of such power, therefore, comes directly within the principle of Plumley v. Mass., 155 U. S. 461 (15 Sup. Ct. Repr. 154); Silz v. Hesterberg, 211 U. S. 31 (29 Sup. Ct. Repr. 10).

When the act against taking fish with a certain kind of seine went into effect, there were doubtless many seines of the prohibited class manufactured, and in existence. The same may be said of swivel guns, when the act making it unlawful to kill certain wild fowl with such guns became a law, and the rule would apply with equal force to any new agency or device that is particularly prohibited. When the interests of the private manufacturer and the public weal come in conflict, from the legislative standpoint, the people at large are to have the preference. The act is general in its prohibition, affecting all alike, and protects from the automatic gun every kind of game in this commonwealth: Halter v. State, 7 L. R. A. (N. S.) 1079; Com. v. Kenney, 32 Pa. Superior Ct. 544; Com. v. Bercaw, 30 Pa. Superior Ct. 335; N. Y., etc., R. R. Co. v. New York, 165 U. S. 628 (17 Sup. Ct. Repr. 418).

The Act of June 10, 1881, P. L. 111, forbids the sale to any person under sixteen years of age of a pistol, revolver, etc. The Act of March 31, 1860, P. L. 382, provides for the confiscation of gambling apparatus. Even the length of time a female laborer shall be subjected to the exhaustion of physical labor is within legislative control: Com. v. Beatty, 15 Pa. Superior Ct. 5. The object of the act is not to favor the makers of one sort of gun, at the expense of those of other kinds, but its sole object is to protect game, and the methods

adopted for its destruction, whether guns, traps or devices, are proper subjects for legislative consideration, just as the manufacture and use of explosives, the regulation of the practice of medicine, the dealings of hawking and peddling, the use of automobiles, the employment of minors, the taking of game, the use of public highways are general, and affect all alike; so that, a specially designed gun, which is made particularly effective and proportionately dangerous to game comes within the class of dangerous agencies either to be regulated or prohibited, as the legislature may decide.

The judgment of the court below is reversed, and the record is remitted to the end that the sentence imposed may be fully carried into effect.

*Error assigned* was in declaring the act constitutional.

*John G. Johnson* and *William I. Schaffer*, with them *William Findlay Brown*, for appellant.—The act is unconstitutional because an unreasonable exercise of the police power arbitrarily interfering with private property and unjustly discriminating against the owner of a certain kind of gun: Barbier v. Connolly, 113 U. S. 27 (5 Sup. Ct. Repr. 357); Mugler v. Kansas, 123 U. S. 623 (8 Sup. Ct. Repr. 273); In re Marshall, 102 Fed. Repr. 323; Lawton v. Steele, 152 U. S. 133 (14 Sup. Ct. Repr. 499); Holden v. Hardy, 169 U. S. 366 (18 Sup. Ct. Repr. 383); Iler v. Ross, 57 L. R. A. 895; Chicago, etc., R. R. Co. v. Nebraska, 41 L. R. A. 481; s. c., 53 Amer. St. Rep. 557; 41 L. R. A. 481; Smiley v. McDonald, 47 Amer. St. Rep. 684; 27 L. R. A. 540; Ex parte Whitwell, 35 Amer. St. Rep. 152; 19 L. R. A. 727.

Depriving an owner of the use of his gun, is to deprive him of his property. Any limitation upon its use is an interference with his right of property in it: Matter of Jacobs, 98 N. Y. 98; Pumpelly v. Green Bay Co., 80 U. S. 166; Wynehamer v. People, 13 N. Y. 378; People v. Otis, 90 N. Y. 48; Forster v. Scott, 136 N. Y. 577 (32 N. E. Repr. 976).

*S. B. Sadler*, with him *Josiah Smith*, for appellee.—Various attempts to prevent excessive killing or capture of game,

by preventing the use of too effective implements or methods have been used and sanctioned.

Camp hunting, that is, with the use of tents, has been prevented: DeBose v. State, 74 S. W. Repr. 292.

The use of explosive shells in fishing may be prohibited: Lawton v. Steele, 152 U. S. 133 (14 Sup. Ct. Repr. 499); Taylor v. State, 55 S. W. Repr. 832.

Taking fish otherwise than by "hook and line, or rod held in the hand," may be prevented: Lawton v. Steele, 152 U. S. 133 (14 Sup. Ct. Repr. 499); People v. Conrad, 83 N. W. Repr. 1012.

Using a fyke net may be punished: Com. v. Lohman, 8 Kulp, 485; Com. v. Wetherill, 23 Pa. C. C. Rep. 59.

The use of seines is often prohibited in the taking of fish: People v. Bridges, 142 Ill. 30 (31 N. E. Repr. 115); Com. v. Drain, 99 Ky. 162 (35 S. W. Repr. 269); State v. Blount, 85 Mo. 543; In re Yell, 107 Mich. 228 (65 N. W. Repr. 97).

The difficulty of proof justifies prohibitions so wide that in preventing improper, they also prevent proper acts: Powell v. Penna., 127 U. S. 678 (8 Sup. Ct. Repr. 992–1257); Waters-Pierce Oil Co. v. Deselms, 212 U. S. 159 (29 Sup. Ct. Repr. 270); N. Y. ex rel. Silz v. Hesterberg, 211 U. S. 31 (29 Sup. Ct. Repr. 10); State v. Rodman, 58 Minn. 393 (59 N. W. Repr. 1098); In re Deininger, 108 Fed. Repr. 623; People v. Dornbos, 127 Mich. 136 (86 N. W. Repr. 529); Com. v. Savage, 155 Mass. 278 (29 N. E. Repr. 468).

Per Curiam, March 7, 1910:

The question raised by this appeal was properly decided by the Superior Court and the judgment is affirmed on its opinion.