## Commonwealth v. Haugh.

*John G. Love*, District Attorney, for Commonwealth.

*N. B. Spangler* (with him *Ivan Walker*), for defendant.

FLEMING, P. J., May 3, 1929.—On Oct. 16, 1928, the defendant was arrested on information made by Game Protector Thomas Mozier, charging him with a violation of section 720 of the Act of May 14, 1925, P. L. 752, in that he had, after having killed a deer upon his property, failed to report the same to the nearest game protector or to the Game Commission at Harrisburg, Pa., within twenty-four hours after such killing. The defendant, upon being brought before a justice of the peace, admitted the killing of the deer in question as well as his failure to report the same, and also admitted the killing of ten or twelve additional deer and his similar failure to report them. The game protector entered into an agreement in writing with the defendant to pay the penalty stipulated by said act for five deer and costs, amounting in the aggregate to $515. On Oct. 18, 1928, an appeal was allowed by this court and the matter is now before us on appeal.

There is apparently no dispute existing as to the facts. The defendant frankly admits the killing, not alone of the one deer, upon which information was based, but of ten or twelve other deer. The Commonwealth admits that damage had been done by deer upon the farm of Harvey Haugh, where defendant resided as a tenant during the year 1928. The defendant contends that he is not guilty of any violation of law and raises a question as to the constitutionality of the act of assembly upon which the information is founded. This is our primary consideration herein. Should the act be found to contravene the provisions of our Constitution, then, of course, the defendant should be discharged. If not, we must proceed further and ascertain the validity of the fine imposed by the justice.

Section 720 of article VII of the Act of May 24, 1923, P. L. 359 [as amended by the Act of May 14, 1925, P. L. 752, 756], provides as follows:

"Nothing in this act shall be construed to prevent any person actually residing upon or cultivating, as a means of gaining a livelihood, any lands for general farm crop purposes, commercial trucking or fruit orchard or nursery, being regularly maintained for commercial purposes, as either the owner or lessee, or any member of the family of such owner or lessee residing upon and assisting in the cultivation of such lands, or the employee of such owner or lessee who regularly assists in the cultivation of such lands, from

killing, in any manner except through the use of poison, at any time, any elk or deer, or bear, or rabbit, or squirrel, or raccoon, or the birds commonly known as blackbirds, regardless of sex or age, which he may find on such lands actually engaged in the material destruction of cultivated fruit trees, cultivated crops, vegetables, livestock, poultry or bee-hives, or in the case of red squirrels or blackbirds destroying either the eggs or young of protected or game birds; or from destroying such animals or birds anywhere on the property under their control immediately following such destruction, or where the presence of such bird or animal on any such aforesaid cultivated lands or in any such aforesaid fruit orchards is just cause for reasonable apprehension of additional imminent destruction. Any such person shall, upon request of any representative of the board, produce satisfactory evidence that material damage has been done within thirty days, and that there was just cause for reasonable apprehension of additional imminent destruction by the species of animal or bird killed, except in the case of red squirrels and blackbirds; and in the case of elk, deer or bears shall report such killing within twenty-four hours, either verbally or in writing, to the nearest game protector or the office of the board at Harrisburg, and shall immediately remove the entrails, hang up and care properly for the carcass of any such animal killed for delivery to any charitable institution designated by such officer or board. Failure to produce satisfactory evidence of material damage, or lack of reasonable cause for apprehension of additional imminent destruction, *or failure to make the report herein required,* or dress and care for such carcass properly, unless retained for food, or use, in the manner herein specified, all edible portions of a carcass retained for food, shall subject any person killing any animal or bird herein named, or using or having in possession any portion of the carcass in any manner contrary to this section, to the full fine hereinafter provided for unlawfully killing or having in possession such animal or bird, or part thereof."

It is contended that the provisions of the above act are contrary to article I, section 1, of the Constitution of Pennsylvania, which provides that "All men . . . have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property."

When Judge Gillan wrote the opinion in Com. *v.* Gilbert, 5 D. & C. 443, the Act of May 24, 1923, P. L. 359, had not then been amended as is quoted above. The matter before him was an appeal from a conviction before a justice of the peace for having shot and killed a doe deer. The property therein alleged to have been defended against destruction by the deer killed was an apple orchard containing over 5000 trees, most of them in bearing condition. The subject for Judge Gillan's consideration in the case cited was *the killing of a deer* by the owner of land alleged to have been damaged by such animal and not *the failure to report such killing* as is the subject in the instant case. We fully concur in the learned judge's conclusions that "the owner of real estate has an indefeasible right to destroy a deer when necessary to protect his crop" and that "any legislation which undertakes to deprive him of that right contravenes the Constitution."

The defendant in the instant case was not arrested for killing deer. It is for his failure to report such killing that he is now before us. The Act of May 14, 1925, P. L. 752, expressly allows the killing of deer which have been found destroying private property specifically mentioned therein. The property admitted to have been destroyed in this case comes within the kinds of property mentioned in such act. The right to kill is not confined to the owner

of the land, but has been extended to lessees, members of the family of such owners or lessees and to the employees of such owners or lessees. The fact that the defendant was a lessee of the owner has been admitted. That the Act of 1925 contravenes the Constitution by preventing or obstructing the enjoyment and defense of the life and liberty of our citizens or their right to acquire, possess and protect their property has not been and cannot be seriously contended. On the contrary, full and complete permission or authority so to act has been specifically ratified, confirmed and conferred by such legislation. The defendant now before us, however, contends that the provision in said act which requires such owner, lessee, member of the family of owner or lessee, or employee of owner or lessee, to report such killing to the nearest game protector or to the office of the Board of Game Commissioners at Harrisburg within twenty-four hours after such killing is an unreasonable exercise of the police power of the Commonwealth, and that it, therefore, contravenes the Constitution. With this contention we most emphatically disagree.

With the founding of our Commonwealth and its early settlement came the unrestricted right to hew from our hills and plains the virgin timber. Without hindrance as to time when or the manner in which it was done our forefathers killed the game existing in our colonial forests. This was necessary to provide shelters for our settlers and to furnish food with which to sustain life. As our population increased and our modes of living advanced came a serious decrease of the natural advantages of our forests. Our hills were denuded of their stately trees and our wild life failed to properly survive the march of civilization. With a realization of the fact that a continuance of such depletion of our timber and our game would seriously impair the welfare of our people came governmental regulation of these most vital matters. That such was a proper exercise of governmental authority, hindering or preventing in no manner the life or liberty of our citizens or their right to acquire, possess and protect property, but on the contrary advancing such interests, has never been seriously questioned.

Much interest has been manifested, not only by those in authority in our Commonwealth but by our citizens individually, in the propagation and protection of our game. Proper and valid laws have been enacted, the purpose of which has been to encourage our wild life in general. Restrictions have been placed upon the times when and the manner in which our citizens and those from other states shall pursue this wild life within our borders. Our statutes have provided that before any one can legally hunt in our hills and valleys they must first establish their right so to do by qualifying for and obtaining a proper license. The manner in which such license shall be worn or exhibited has been provided by statute. The privilege of hunting has been restricted to American citizens and the right to possess firearms denied to all aliens in a desire to advance the interest of our game. Even the kind of firearms which shall be used by our hunters and the kind of ammunition to be used therein have been restricted by our statutes. Dogs which pursue deer have been required to answer with their lives for such annoyances caused by them. All these regulations have been imposed, not arbitrarily, but with the purpose of preventing the elimination of wild life from our State, and the consequent benefit to our citizens at large by way of healthful recreation, supply of food and the general betterment of both State and people. None of these regulations have been challenged as being unreasonable exercises of the police power of the Commonwealth. See Com. *v.* Papsone, 44 Pa. Superior Ct. 128; Com. *v.* McComb, 227 Pa. 377.

Having for its purpose the general good of our State and people, and having enacted the safeguards mentioned and others, our legislature has in its wisdom seen fit to enact the requirement that after an owner, lessee, member of the family of owner or lessee, or employee of owner or lessee, has killed a deer alleged to have caused damage to property, he shall make report of such killing to the nearest game protector or to the office of the Board of Game Commissioners at Harrisburg, Pa. This is for the sole purpose of enabling such commission to ascertain, as a matter of fact, whether or not the constitutional right of the person killing such animal has actually existed at the time of such killing. This imposes no hardship upon such person, and is an act which should be willingly done by any citizen actually interested in the advancement of respect for law and the maintenance of good government. With the broadened scope of our rural delivery, one cent enables the party concerned to remain a law-abiding citizen, should the location of the nearest game protector be inaccessible on the happening of such an event. To open the door to the killing of our wild life and to permit the promiscuous killing of deer by owners, lessees, members of the family of owner or lessees, or by employees of owners or lessees, under the guise of the constitutional right mentioned above, without enabling that branch of our government charged with the protection of our game and the enforcement of laws relating thereto to investigate and check upon such alleged claims, would be to create such a chaotic condition as would render naught all protection heretofore thrown about our wild life for the good of our State and its people.

The defendant in the case before us admits his failure to make the report as required by the act. He attempts to justify his position by saying that he had reported former killings to the game protector and did not consider it necessary to further comply with this requirement. Such contention is further evidence of the necessity of the check-up or investigation by the Game Commission provided for in the act. Were such an excuse to suffice, it would be reasonable to expect a further excuse that the party in question or others killed deer, not because they damaged crops, but because such person might be of the opinion that such damage might ensue, other deer having formerly damaged crops elsewhere, and so on until a condition of complete disregard of governmental restriction would prevail.

We hold that the provision requiring the reporting of the killing of a deer, by the owner or lessee, member of the family of the owner or lessee, or employee of owner or lessee, to the nearest game protector or to the office of the Board of Game Commissioners at Harrisburg within twenty-four hours after such killing is a reasonable exercise of the police power of the Commonwealth and does not contravene the Constitution in any respect.

We, therefore, find the defendant guilty. Before dismissing the appeal herein, we must further consider the amount of the fine imposed by the justice of the peace in this case. The information made was for the failure to report one deer. The evidence shows that at the hearing the defendant admitted to the game protector and to the justice of the peace that he had killed and failed to report ten or twelve other deer under similar circumstances; that thereupon an agreement in writing was entered into between the defendant and two game protectors that, as a compromise, the defendant would pay the fine for five deer, amounting in all to $515. We note, however, that the penalty imposed upon the defendant by the justice is a fine of $100 and costs of $3.25, and in default of such payment to serve 103 days in the county jail.

It is evident that the justice quite properly took cognizance only of the matter before him, to wit, the failure to report the killing of one deer. Section 1103, article XI, of the Act of May 24, 1923, P. L. 359, provides a means whereby an offending party may acknowledge his guilt, either before or after the beginning of suit, and pay to any duly appointed and commissioned game protector the fine provided by such act, together with the costs accruing to that date. The defendant herein appears, by paper attached to the justice's record, to have acknowledged his guilt as to his failure to report three deer killed on or about Sept. 19, 1928, one deer killed on or about Oct. 6, 1928, and one deer killed on or about Oct. 10, 1928. From the fact that this matter is now before us, we find that defendant denies his liability to pay the stipulated fine and costs for any of these deer. He has not been arraigned for failure to report the three deer killed on or about Sept. 19, 1928, or the one deer killed on or about Oct. 10, 1928. He is before us at this time for having failed to report the killing of one deer on or about Oct. 6, 1928. No legal costs have accrued other than those appearing on the transcript of the justice, which were, before appeal, $3.25, and which are now increased, by reason of the appeal, to $4. In the light of defendant's present attitude, we are not justified or permitted, under our Constitution, in compelling the defendant to pay more than that for which he has been regularly charged under the record before us. The statute of limitations has not run against the other offenses, and if defendant still persists in his refusal to abide by the fair and equitable adjustment consented to by the game protector, further informations can be lodged against the defendant for all such violations as he is alleged to have committed. The defendant can then be accorded a full opportunity for hearing and the matter disposed of under the law and the evidence.

And now, May 3, 1929, the appeal is dismissed and the defendant is sentenced to pay a fine of $100, together with the costs of prosecution and this appeal, or, upon failure to make such payment, to be imprisoned in the county jail one day for each dollar of fine and costs imposed.

From S. D. Gettig, Bellefonte, Pa.