## In re Fish Wardens

ADAMS, Deputy Attorney General, September 13, 1940. —This department is in receipt of your request to be advised whether or not a fish warden was within his rights, under section 256(g) of The Fish Law of May 2, 1925, P. L. 448, 30 PS §256, in entering upon land owned privately, and posted under The Penal Code of June 24, 1939, P. L. 872, 18 PS §4954, on which land he had reason to believe violations of The Fish Law were occurring.

Section 256 of The Fish Law, supra, reads as follows:

"A fish warden shall have power:

"(a) To enforce all the laws of the Commonwealth relating to fish; (b) to execute all warrants and search-warrants for the violation of the fish laws; (c) to serve subpœnas issued for the examination, investigation, and trial of all offenses against the laws relating to fish; (d) to carry firearms or other weapons in the performance of his duties; (e) to search without warrant any boat, conveyance, vehicle, fish-box, bag, coat, basket, or other receptacle for fish, when he has reason to believe that any

provision of any law of this Commonwealth relating to fish has been violated; (f) to seize and take possession of any and all fish which may have been caught, taken, or killed at any time, in any manner, or for any purpose, or had in possession or under control, or have been shipped or about to be shipped contrary to the laws of this Commonwealth—fish so seized shall be disposed of in any manner as the Commissioner may direct; (g) *to enter upon any land or water in the performance of his duty;* (h) to demand and secure proper assistance in case of emergency; (i) to purchase fish for the purpose of securing evidence." (Italics supplied.)

Section 270 of The Fish Law requires fish wardens to *arrest with or without warrant* any person violating any provisions of the act.

Section 2706 of The Administrative Code of April 9, 1929, P. L. 177, defines the powers of fish wardens, and states in part as follows:

"(g) To enter upon any land or water in the performance of his duty . . ."

At common law, no trespass to property is a crime unless a breach of the peace results.

In 63 C. J. 1075, §300, under the title "Trespass", it is said:

"No trespass to property is a crime at common law unless it is accompanied by or tends to create a breach of the peace. This is so, although the act be committed forcibly, willfully, or maliciously. Something more must be done than what amounts to a mere civil trespass, expressed by the terms vi et armis; the peace must be actually broken or the act complained of must directly and manifestly tend to it, as being done in the presence of the owner, to his terror or against his will. But when a trespass is attended by circumstances constituting a breach of the peace, it becomes a public offense subject to criminal prosecution."

However, the General Assembly of Pennsylvania passed the Act of April 14, 1905, P. L. 169, 18 PS §3311,

which was repealed and substantially reënacted by section 954 of The Penal Code, supra, which reads as follows:

"Whoever wilfully enters upon any land, which the owner has caused to be prominently posted with printed notices that the said land is private property, and warning all persons from trespassing thereon, under the penalties provided in this section, shall, upon conviction thereof in a summary proceeding, be sentenced to a fine not exceeding ten dollars ($10), together with the costs of prosecution, and in default of payment of said fine and costs, shall be committed to jail for one (1) day for each dollar of fine imposed."

The Act of 1905, supra, which was repealed, but substantially reënacted in The Penal Code, was under consideration by the Superior Court in the case of Commonwealth v. Burford, 38 Pa. Superior Ct. 201 (1909), affirmed, 225 Pa. 93 (1909), where the court said (p. 204):

"It requires no resort to artificial rules of construction to arrive at the conclusion that what the legislature here declared to be unlawful was a willful trespass upon land which had been posted by the owner in the manner indicated by the statute. *It certainly was not the legislative intention to prohibit every entry, whether with or without right, upon land which had been thus posted; and give to the soil a sacred character.* In seeking the legislative intention it would not be reasonable to confine the inquiry to the one clause of the section made up of these words, 'It shall be unlawful for any person willfully to enter upon any land,' which has been posted. To do this would be to hold that the owner could not enter upon his own land, nor make any contract permitting any other person to so enter. The notices which the act requires to be posted must warn 'all persons from trespassing' upon the lands. Considering the section as a whole its meaning is free from doubt. When the owner has posted upon the land notice warning all persons against trespassing thereon, an intentional trespass shall render the trespasser subject to the penalty imposed by the statute. When thus read

the statute contains nothing of which its title did not give that notice required by the constitution. The statute certainly contains nothing from which could be implied a legislative intention to do anything but make subject to a penalty such things as were and always had been trespasses upon land. *The effect of the statute was to declare to be a public wrong and subject to a penalty a thing which had until that time been a private wrong for which the party injured had a remedy by private action.* This act did not change the rights of the owner of the land, nor deprive him of any power to enter into contracts giving to other persons the right to enter upon his holdings, nor can it have any effect upon the rights acquired under any contract with regard to said lands, into which he may enter . . ." (Italics supplied.)

The Act of 1905 was also under consideration in the case of Commonwealth v. Albaugh, 13 D. & C. 401 (1929), in which case the court said (p. 407) :

" 'The word "wilful," used in a statute creating a criminal offense, means something more than an intention to do a thing. It implies the doing of the act purposely and deliberately, indicating a purpose [on the part of the defendant] *to do it without authority;* careless whether he has the right or not; *in violation of law;* and it is this which makes the criminal intent, without which one cannot be brought within the meaning of a criminal statute.' " (Italics supplied.)

The Act of 1905, supra, was before the Superior Court in the case of Commonwealth v. Peterman et al., 130 Pa. Superior Ct. 497 (1938), in which the court said (p. 500) :

"The intendment of this statute was to impose a penalty for a *willful* trespass—an entry upon land without a lawful excuse."

In 63 C. J. §311, p. 1081, it is said, in speaking of the word "wilful" or "wilfully" :

"It includes the idea of an 'act intentionally done with a wrongful purpose.' "

It is our opinion that, under the circumstances as you have stated them, the fish warden was not acting without authority, nor in violation of the law nor for a wrong purpose but, on the contrary, was exercising the authority granted to him by the General Assembly for the purpose of performing the duties imposed upon him by the General Assembly.

The Constitution of the Commonwealth of Pennsylvania in article I, sec. 8, reads as follows:

"The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant."

Does this constitutional provision affect the powers given by the General Assembly to the fish warden? This question has not been decided by the courts, with reference to The Fish Law of 1925, but was before the courts with reference to the Act of July 2, 1895, P. L. 428, 37 PS §121. Section 4 of this act, 37 PS §142, provides that building inspectors, health officers, fire marshals, and police officers shall, at all times, have access to every public lodging house.

In the case of Commonwealth v. Muir, 180 Pa. 47 (1897), it was held that this authority was constitutional as a legitimate exercise of the police power of the State. That the constitutional provision with regard to unreasonable searches was raised against the act may be seen from the opinion in the Superior Court, Commonwealth v. Muir, 1 Pa. Superior Ct. 578, 580.

The Pennsylvania constitutional provision against unreasonable searches and seizures is similar to the Fourth Amendment to the Constitution of the United States, and while this amendment has no application to State process (Commonwealth v. Dabbierio, 290 Pa. 174 (1927)), we believe it pertinent to state that the court said in the case of United States v. McBride, 287 Fed. 214 (S. D., Ala.,

1922), affirmed, 284 Fed. 416 (C. C. A., 5th, 1922), certiorari denied, 261 U. S. 614, 67 L. ed. 827 (1923), at page 216 of 287 Fed.:

"When the Constitution says the people shall be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, it does not mean to say that the lands of a person shall not be searched, nor that the premises of a person shall not be searched, because we all know that there is a very great difference between one's house and one's lands or premises, and the word 'house' does not *include lands or premises*. We therefore see that the framers of the Constitution used a restricted word, the word 'house,' in guaranteeing against unreasonable searches. I take it there *is nowhere* any provision against an officer searching one's lands or premises without having a warrant authorizing him to do so." (Italics supplied.)

We are of the opinion that this reasoning is applicable to article I, sec. 8, of the Pennsylvania Constitution.

Article XVI, sec. 3, of the Constitution of Pennsylvania reads in part as follows:

". . . the exercise of the police power of the State shall never be abridged . . ."

Laws pertaining to the protection and preservation of fish have been recognized as within the proper domain of the police power of the State. See Lawton v. Steele, 152 U. S. 133, 38 L. ed. 385 (1894), Geer v. Connecticut, 161 U. S. 519 (1896), and Commonwealth v. McComb, 39 Pa. Superior Ct. 411 (1909), 227 Pa. 377 (1910).

It is our opinion that the legislature, in passing section 954 of the Act of 1939, P. L. 872, did not intend to abridge the powers of the fish wardens and did not intend to make it practically impossible to enforce the fish laws, which would be the effect if every owner of land could, by posting, make his land a sanctuary for violators of the fish laws.

Nevertheless, the authority granted to the fish wardens should and must be exercised in a reasonable manner and

68

should not be used as a means of harassing and annoying landowners, nor abused to the extent that the fish wardens' activities become a nuisance.

We are, therefore, of the opinion, and you are accordingly advised, that fish wardens are justified in the performance of their duties in entering upon privately-owned land which has been posted, pursuant to section 954 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §4954, when they have reasonable cause to believe that the fish laws are being violated.